**James MOLLICK, Appellant**

v.

**TOWNSHIP OF WORCESTER.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs June 17, 2011.

Decided Dec. 7, 2011.

Craig J. Staudenmaier, Harrisburg, for appellant.

Joseph M. Bagley, Blue Bell, for appellee.

David R. Getz, Harrisburg, for amicus curiae Pennsylvania State Association of Township Supervisors.

Sean A. Fields, Senior Assistant Counsel, Mechanicsburg, for amicus curiae Pennsylvania School Boards Association.

Stanley J.A. Laskowski, Harrisburg, for amicus curiae Pennsylvania State Association of Boroughs.

BEFORE: COHN JUBELIRER, Judge, and McCULLOUGH, Judge, and BUTLER, Judge.

OPINION BY Judge COHN JUBELIRER.

In these consolidated appeals,[1] James Mollick (Requestor) appeals from three separate Orders of the Court of Common Pleas of Montgomery County (trial court) dated September 22, 2010, September 30, 2010, and October 1, 2010, which held that the Township of Worcester (Township) properly denied Requestor's four requests, pursuant to the Right to Know Law (RTKL),[2] for emails transmitted by and between the Township Supervisors on their personal computers and/or via their personal email accounts.[3] Requestor argues that the trial court made several unsupported factual findings and committed several clear errors of law by holding that the deliberation of Township business by and among a quorum of the Township Supervisors via the Supervisors' personal computers/email accounts is not an activity "of" the agency which subjects the emails to public access pursuant to the RTKL.

---

1. Upon consideration of the parties' stipulation to consolidate pursuant to Rule 513 of the Pennsylvania Rules of Appellate Procedure, this Court consolidated these appeals by Order entered April 11, 2011.

2. Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101–67.3104.

3. The Pennsylvania State Association of Township Supervisors, the Pennsylvania State Association of Boroughs, and the Pennsylvania School Boards Association filed amicus curiae briefs in support of part of the Township's position in these appeals.

## I. INTRODUCTION

These matters began with four separate RTKL requests by Requestor for certain emails transmitted by and between the Supervisors on their personal computers and/or via their personal email accounts. Details of each request, the responses by the Township and the disposition of the parties' appeals by the Office of Open Records (OOR) and the trial court are as follows.[4]

### A. REQUESTOR'S FIRST REQUEST

On January 1, 2009, Requestor requested, via email, that the Township provide:

1. [A]ny and/or all e-mails between any and/or all of the Supervisors regarding the Moran property for the past 1 year or 365 days regardless of whether they were transmitted on their personal computers and/or email accounts.

2. [A]ny and/or all e-mails between any and/or all of the Supervisors regarding the Cindy Haines property for the past 1 year or 365 days regardless of whether they were transmitted on their personal computers and/or email accounts.

3. [A]ny and/or all e-mails between any and/or all of the Supervisors regarding any Township business for the past 1 year or 365 days regardless of whether they were transmitted on their personal computers and/or email accounts.

4. [A]ny and/or all e-mails between any and/or all of the Supervisors regarding any Township business for the past 5 years regardless of whether they were transmitted on their personal computers and/or email accounts.

5. [A]ny and/or all e-mails between any and/or all of the Supervisors and any and/or all Township employees regarding any Township business for the past 1 year or 365 days regardless of whether they were transmitted on their personal computers and/or email accounts.

6. [A]ny and/or all e-mails between any and/or all of the Supervisors and any and/or all Township employees regarding any Township business for the past 5 years regardless of whether they were transmitted on their personal computers and/or email accounts.

7. [A]ny and/or all e-mails between any and/or all of the Supervisors regarding the Cindy Haines property for the past 5 years regardless of whether they were transmitted on their personal computers and/or email accounts.

(Right to Know Request, January 1, 2009 (First Request), Reproduced Record (R.R.) at 4a.) On January 16, 2009, after receiving the First Request on January 8, 2009, the Township's Open Records Officer denied Requestor's request for the emails requested in paragraphs 1, 2, and 7 based on the determination that: (1) any email or letter transmitted between the Supervisors and the Township Solicitor are protected by attorney-client privilege; (2) the requested emails are not in the possession of the Township so as to be presumed a

---

4. Two of Requestor's four appeals to the OOR were consolidated and decided in one final decision, resulting in the OOR issuing three decisions instead of four. Therefore, there were three appeals by the Township to the trial court. The trial court did not formally consolidate the Township's three appeals; however, the trial court heard argument on the three appeals simultaneously on September 10, 2009. Thereafter, the trial court rendered three separate Decisions and Orders.

public record pursuant to Section 305(a) of the RTKL;[5] (3) if the Township Supervisors emailed each other without copying the Township regarding the "Moran Property" or the "Cindy Haines Property," any such email is not in the possession of the Township and does not constitute a public record; and (4) with regard to emails sent or copied to the Township concerning the "Moran Property" or the "Cindy Haines Property", the Township is not in possession of any such public records which are not privileged communications involving the Township Solicitor. (Right–to–Know Response, January 16, 2009 (First Response) at 1–4, R.R. at 5a–8a.) The Township's Open Records Officer denied Requestor's request for the emails requested in paragraphs 3, 4, 5, and 6 because the request was vague, overly broad, and did not identify any document with sufficient detail, as required by Section 703 of the RTKL,[6] in order for the Township to ascertain which records were being requested. (First Response at 1–4, R.R. at 5a–8a.) The Township did not set forth any of the exceptions/exemptions from public access set forth in Section 708 of the RTKL[7] as a reason for its denial of the First Request. (First Response at 1–4, R.R. at 5a–8a.)

On February 1, 2009, Requestor appealed the Township's First Response to the OOR, arguing that the requested emails were public records because communications relating to Township business among a quorum of the three Supervisors are required to take place in public, per the Sunshine Act.[8] (Requestor's Right to Know Law Appeal, February 1, 2009 (First OOR Appeal) at 1–7, R.R. at 9a–30a.) Requestor argued further that, pursuant to Section 708(b)(10)(ii) of the RTKL, 65 P.S. § 67.708(b)(10)(ii), the RTKL applies to agencies subject to the Sunshine Act and a record that is not otherwise exempt and which is presented to a quorum for deliberation in accordance with the Sunshine Act is a public record. (First OOR Appeal at 1–7, R.R. at 14a.) Therefore, Requestor requested an in camera inspection of all the emails outlined in paragraphs 1–7 of the First Request to determine whether a quorum of the Supervisors was communicating with each other and/or the Township Solicitor. (First OOR Appeal at 1–7, R.R. at 14a.) Finally, with respect to paragraphs 3, 4, 5, and 6 of the First Request, Requestor argued that, because he does not know what emails the Township possesses or how they are catalogued, his request had to be broad enough to be all-inclusive. (First OOR Appeal at 1–7, R.R. at 15a–16a.)

By correspondence dated February 24, 2009, the Township filed a response with the OOR to Requestor's First OOR Appeal. (Township's Response to First OOR Appeal at 1–8, R.R. at 23a–30a.) Therein, the Township presented the following arguments in opposition to Requestor's appeal: (1) the requested emails do not qualify as public records because they are not in the Township's possession and therefore not "of an agency"; (2) alternatively, if the

---

**5.** 65 P.S. § 67.305(a). Section 305(a) provides that "[a] record in the possession of a Commonwealth agency or local agency shall be presumed to be a public record."

**6.** 65 P.S. § 67.703. Section 703 provides, in pertinent part, that "[a] written request should identify or describe the records sought with sufficient specificity to enable the agency to ascertain which records are being request-ed and shall include the name and address to which the agency should address its response."

**7.** 65 P.S. § 67.708. Section 708 sets forth several types of records that are exempt from access by a requestor under the RTKL.

**8.** 65 Pa.C.S. §§ 701–716.

requested emails were in the Township's possession, they would be protected by attorney-client privilege; and (3) paragraphs 3, 4, 5, and 6 of the First Request do not comply with Section 703 of the RTKL because they are not sufficiently specific. (Township's Response to First OOR Appeal at 1–8, R.R. at 23a–30a.)

By Final Determination issued March 5, 2009, the OOR granted, in part, and denied, in part, Requestor's First OOR Appeal without conducting an evidentiary hearing.[9] (Final Determination, March 5, 2009 (First Final Determination) at 8, R.R. at 38a.) The OOR concluded that the emails requested in paragraphs 1, 2, and 7 of the First Request were "of the Township." (First Final Determination at 5, R.R. at 35a.) The OOR held that: (1) "[e]mails of a Supervisor that pertain to Township business do not need to be copied to the Township to qualify as a record 'of' the Township;" (2) "[e]lectronic correspondence among Township Supervisors relating to Township business are Township records because they document communication among members of the Township's governing body;" and (3) "[u]nder the Sunshine Law, a quorum cannot deliberate Township business behind closed doors, 65 Pa.C.S. § 704, so if the emails deliberate Township business, they are public."[10] (First Final Determination at 6, R.R. at 36a.) The OOR opined that the RTKL could not be "construed to permit Township business to be conducted via

personal emails on personal computers by the Supervisors." (First Final Determination at 5, R.R. at 35a.) The OOR determined further that the requested emails were not protected by attorney-client privilege because "[e]mails between two Supervisors are not for the purpose of obtaining legal advice, which is the only proper subject for the assertion of the attorney-client privilege." (First Final Determination at 5, R.R. at 35a.) The OOR pointed out that the Township did not disclose a single email in response to paragraphs 1, 2, and 7 of the First Request, Requestor was not seeking emails to or from the Township Solicitor, and that emails that merely copy or inform the Township Solicitor are not protected by attorney-client privilege. (First Final Determination at 5–6, R.R. at 35a–36a.)

The OOR found that, from the record, it did not appear as though the Township conducted a good faith review of its records to ascertain whether it could provide any of the requested emails.[11] (First Final Determination at 7, R.R. at 37a.) The OOR observed that, instead, the Township denied Requestor's request in its entirety without furnishing a single email and without stating that such emails do not exist. (First Final Determination at 7, R.R. at 37a.) Accordingly, the OOR concluded that, presuming that such emails exist, all of the requested emails in paragraphs 1, 2, and 7 were public records, and further

9. Sections 1101 and 1102 of the RTKL, 65 P.S. § 67.1101—1102, permit the OOR to conduct a hearing prior to issuing a final determination; however, "[a] decision to hold or not to hold a hearing is not appealable." Section 1102(a)(2) of the RTKL, 65 P.S. § 67.1102(a)(2).

10. Section 704 of the Sunshine Act provides that "[o]fficial action and deliberations by a quorum of the members of an agency shall take place at a meeting open to the public unless closed under section 707 (relating to

exceptions to open meetings), 708 (relating to executive sessions) or 712 (relating to General Assembly meetings covered)." 65 Pa.C.S. § 704.

11. Section 901 of the RTKL requires an agency to make a good faith effort to determine whether the record requested is a public record and whether the agency has possession, custody or control of the identified record. 65 P.S. § 67.901.

found that the emails of the Supervisors that related to Township business and the properties named in paragraphs 1, 2, and 7 were public records that the Township was required to disclose. (First Final Determination at 7, R.R. at 37a.)

The OOR determined further that the request was sufficiently specific to inform the Township as to what documents Requestor was seeking in paragraphs 3, 4, 5, and 6 of the First Request. (First Final Determination at 7, R.R. at 37a.) The OOR reasoned that Section 703 of the RTKL neither "require[s] a request to identify specific documents or subject[s] ... [n]or does Section 703 require that the subject be specified so an agency can discern from the face of the request whether an exception may apply." (First Final Determination at 7, R.R. at 37a.) However, in order to effectuate the purpose of the RTKL, the OOR directed the Township to conduct a good faith review of the requested emails and provide a sampling to Requestor so that he could "craft a more specific request, which shall be more limited in type, subject-matter, time-frame and scope." (First Final Determination at 7–8, R.R. at 37a–38a.) The OOR concluded that Requestor's revised request "shall not constitute a disruptive request under Section 506(a)" of the RTKL.[12] (First Final Determination at 8, R.R. at 38a.) The Township appealed the OOR's First Final Determination to the trial court.

By Decision and Order dated September 22, 2010, the trial court reversed the First Final Determination. (Trial Ct. Op. at 13, September 22, 2010, R.R. at 285a.) The threshold issue decided by the trial court was whether the requested emails were public records. (Trial Ct. Op. at 5, R.R. at 277a.) The trial court held that Requestor had the burden of establishing that the requested emails bore the characteristics of a public record. (Trial Ct. Op. at 6, R.R. at 278a.) The trial court noted that Section 302(a) of the RTKL[13] only requires the Township to disclose "public records" and that a "public record" is defined in Section 102 of the RTKL as "[a] record, including a financial record, of a Commonwealth or local agency" that is not otherwise exempt or privileged. (Trial Ct. Op. at 6, R.R. at 278a.) The trial court determined that, although the Township qualified as a local agency under the RTKL, "the computers and email accounts identified in this case are not owned, possessed, or under the control of the Township." (Trial Ct. Op. at 7, R.R. at 279a.) As such, the trial court concluded that the emails requested by the First Request that are contained on the Supervisors' personal computers and personal email accounts are neither of the Township nor are they to be construed to be in possession of the Township. (Trial Ct. Op. at 7, R.R. at 279a.)

The trial court concluded further that the OOR erred by ignoring the Township's Open Records Officer's good faith determination that the requested records were not in the Township's "possession, custody or control." (Trial Ct. Op. at 7, R.R. at 279a.) The trial court also determined that: (1) the emails between the Supervisors requested in paragraphs 1, 2, and 7 of the First Request did not constitute a "meet-

---

12. 65 P.S. § 67.506(a). Section 506(a) provides that an agency may deny access if a requestor has made repeated requests for the same record and the repeated requests have placed an unreasonable burden on the agency.

13. 65 P.S. § 67.302(a). Section 302(a) provides that "[a] local agency shall provide public records in accordance with this act."

ing" under the Sunshine Act; [14] and (2) the Township established that the emails that were either directly sent or copied to the Township Solicitor were protected by attorney-client privilege. (Trial Ct. Op. at 8–10, R.R. at 280–82a.)

Finally, the trial court determined that the Township properly denied Requestor's request for the emails set forth in paragraphs 3, 4, 5, and 6 of Requestor's First Request "given the breadth and vagueness of [Requestor's] requests." (Trial Ct. Op. at 11, R.R. at 283a.) The trial court found that the OOR improperly refashioned Requestor's First Request by directing the Township to provide a sampling of the emails requested in paragraphs 3, 4, 5, and 6 so that Requestor could " 'craft a *more specific request, which shall be more limited in type, subject-matter, time-frame and scope.*' " (Trial Ct. Op. at 11, R.R. at 283a (emphasis in original)) (citing *Pennsylvania State Police v. Office of Open Records*, 995 A.2d 515, 516 (Pa.Cmwlth.2010) ("[T]he OOR does not have the authority to unilaterally narrow the scope of a request."))

## B. REQUESTOR'S SECOND REQUEST

On January 9, 2009, Requestor submitted a second RTKL request, via email, to the Township. Therein, Requestor asked the Township to provide:

1. [A]ny and/or all e-mails between any and/or all of the Supervisors regarding the Moran property for the past 5 years regardless of whether they were transmitted on their personal computers and/or personal email accounts.

2. [A]ny and/or all e-mails between any and/or all of the Supervisors regarding the Cindy Haines property for the past 5 years regardless of whether they were transmitted on their personal computers and/or personal email accounts.

3. [A]ny and/or all e-mails between any and/or all of the Supervisors regarding any Township business and/or activities for the past 1 year or 365 days regardless of whether they were transmitted on their personal computers and/or personal email accounts.

4. [A]ny and/or all e-mails between any and/or all of the Supervisors regarding any Township business and/or activities for the past 5 years regardless of whether they were transmitted on their personal computers and/or personal email accounts.

5. [A]ny and/or all e-mails between any and/or all of the Supervisors and any and/or all Township employees regarding any Township business for the past 1 year or 365 days regardless of whether they were transmitted on their personal computers and/or email accounts.

6. [A]ny and/or all e-mails between any and/or all of the Supervisors and any and/or all Township employees regarding any Township business or activities for the past 5 years regardless of whether they were transmitted on their personal computers and/or personal email accounts.

7. [A]ny and/or all e-mails between any and/or all of the Supervisors concerning the "calander (sic) issue"

---

14. The term "meeting" is defined in the Sunshine Act as "[a]ny prearranged gathering of an agency which is attended or participated in by a quorum of the members of an agency held for the purpose of deliberating agency business or taking official action." Section 703 of the Sunshine Act, 65 Pa.C.S. § 703.

from the Sardo federal trial for the last 365 days or 1 year.

8. [A]ny and/or all e-mails between any and/or all of the Supervisors concerning the "calendar (sic) issue" from the Sardo federal trial for the last 3 years.

(Right to Know Request, January 9, 2009 (Second Request), R.R. at 681a.) By Decision dated January 23, 2009, the Township's Open Records Officer denied the Second Request in its entirety for the same reasons he denied the First Request. (Right–to–Know Response, January 23, 2009 (Second Response) at 1–5, R.R. at 682a–686a.) On February 6, 2009, Requestor appealed his Second Request to the OOR presenting the same arguments as he did in his First OOR Appeal. (Requestor's Right to Know Law Appeal, February 6, 2009 (Second OOR Appeal) at 1–7, R.R. at 687a–694a.) Requestor again requested an in camera inspection of all the emails to determine whether a quorum of the Supervisors was communicating with each other and/or the Township Solicitor. (Second OOR Appeal at 1–7, R.R. at 687a–694a.) By correspondence dated February 16, 2009, the Township responded to Requestor's Second OOR Appeal, presenting the same arguments in opposition as it did with respect to the First OOR Appeal. (Township's Response to Second OOR Appeal at 1–6, R.R. at 695a–700a.)

By Final Determination issued March 11, 2009, the OOR granted, in part, and denied, in part, the Second OOR Appeal without conducting an evidentiary hearing. (Final Determination, March 11, 2009 (Second Final Determination) at 7, R.R. at 707a.) The OOR concluded that the Second Request was, in part, largely duplicative of the First Request. (Second Final Determination at 4, R.R. at 704a.) Accordingly, the OOR adopted its decision in the First Final Determination with respect

to paragraphs 3, 4, 5, and 6 of the Second Request and again directed the Township to provide a sampling of the Supervisors' emails that concern the business and/or activities of the Township on subjects other than those specified in paragraphs 1, 2, and 7 or paragraphs 1, 2, 7, and 8 of the First Request and Second Request, respectively. (Second Final Determination at 4, R.R. at 704a.) The OOR did address the parts of paragraphs 1, 2, 7, and 8 of Requestor's Second Request that were not duplicative of the First Request; however, the OOR determined, based on essentially the same reasoning set forth in its First Final Determination, that the requested emails were public records and that they were not protected by attorney-client privilege. (Second Final Determination at 5–7, R.R. at 705a–707a.) The Township appealed the OOR's Second Final Determination to the trial court.

By Decision and Order dated October 1, 2010, the trial court reversed the Second Final Determination. (Trial Ct. Op. at 13, October 1, 2010, R.R. at 811a.) In rendering its October 1, 2010 Decision and Order, the trial court made essentially the same findings of fact and conclusions of law that it set forth in its September 22, 2010 Decision and Order disposing of the Township's appeal of the First Final Determination. (Trial Ct. Op. at 1–13, R.R. at 799a–811a.)

## C. REQUESTOR'S THIRD AND FOURTH REQUESTS

On April 5, 2009, Requestor submitted, via email, a third RTKL request to the Township. Therein, Requestor asked the Township to provide:

A copy of any and/or all emails between Supervisors John Harris and/or Arthur Bustard and/or Chase Kneeland and/ [sic] Steve Quigley pertaining to either the nomination and/or consideration of Caesar Gambone to the Zoning Board

and/or Doug Rotondo to the Planning Commission and/or any nomination for the re-orginization [sic] meeting of January 7, 2008 regardless as to whether they were transmitted on personal computers and/or personal email accounts. (Right to Know Request, April 5, 2009 (Third Request), R.R. at 299a.) After requesting an extension as permitted by the RTKL, the Township's Open Records Officer denied, in part, and granted, in part, the Third Request by Decision dated May 7, 2009. (Right–to–Know Response, May 7, 2009 (Third Response) at 1–3, R.R. at 301a–305a.) The Township's Open Records Officer denied the Third Request for the same reasons he denied Requestor's First and Second Requests but included the reason that only documents created after the January 1, 2009 effective date of the RTKL may be obtained as public records, as an additional basis for the denial. (Third Response at 1–3, R.R. at 301a–303a.) However, the Township's Open Records Officer informed Requestor that a good faith search of the Township's records did disclose one email chain responsive to the Third Request. (Third Response at 3, R.R. at 303a.) As such, the Township's Open Records Officer granted the Third Request, in part, and provided a copy of the email chain to Requestor. (Third Response at 3, R.R. at 303a.) The record shows that the information provided to Requestor constitutes a series of emails between Supervisor Chase Kneeland and Supervisor John Harris, with copies to John Cornell, as Township Manager, and Supervisors Art Bustard and Eunice Kriebel, regarding the applicants for appointment to the Township's planning commission and traffic study committee. (Third Response, R.R. at 304a–305a.)

Requestor appealed the Township's Third Response to the OOR arguing that: (1) the requested emails qualify as deliberations by a quorum of the Supervisors;

therefore, they are public records and can be construed to be within the Township's possession; and (2) the emails are not protected by attorney-client privilege. (Requestor's Right to Know Law Appeal, May 26, 2009 (Third OOR Appeal) at 1–7, R.R. at 306a–313a.) Requestor again requested an in camera inspection of all the emails to determine whether a quorum of the Supervisors were communicating with each other and/or the Township Solicitor. (Third OOR Appeal at 6–7, R.R. at 312a–313a.)

By correspondence dated June 23, 2009, the Township filed a response with the OOR to the Third OOR Appeal. (Township's Response to Third OOR Appeal at 1–6, R.R. at 329a–334a.) The Township first discussed its First and Second Responses and relied on that analysis as support for its denial of the Third Request. (Township's Response to Third OOR Appeal at 1–6, R.R. at 329a–334a.) In addition, the Township noted that it provided Requestor with the email from then Township Supervisor Chase Kneeland to Supervisor John Harris because it was copied to the Township Manager, John Cornell, at his Township email address. (Township's Response to Third OOR Appeal at 6, R.R. at 334a.) This, the Township explained, was consistent with its position in the prior appeals that it would produce any document emailed to the Township which was non-privileged, because such a document would be in the Township's possession. (Township's Response to Third OOR Appeal at 6, R.R. at 334a.)

On May 9, 2009, Requestor submitted, via email, a fourth RTKL request to the Township. Therein, Requestor asked the Township to provide:

[T]he email and/or emails referenced by John Harris at the January 16, 2008 Board meeting when Supervisor Harris

stated that he—"**sent an email to each of the 2 of them (Supervisors Bustard and Quigley), I said this person is someone who would like to be on the zoning board, how does that sit with you, we went ahead and made a motion and then we passed it.**" He was referencing an email about Cesaer (sic) Gambone's possible nomination to the Zoning Board. I would like this regardless as to whether this was transimitted [sic] on the Supervisors['] personal computers and/or personal email accounts. (Right to Know Request, May 9, 2009 (Fourth Request), R.R. at 351a (emphasis in original).) By Decision dated May 14, 2009, the Township's Open Records Officer denied Requestor's Fourth Request for the same reasons he denied the Third Request, but added the additional reason that if the requested email was a public record it would be exempt pursuant to Section 708(b)(10)(i)(A) [15] as a record which reflects the internal, predecisional deliberations of an agency's members or officials. (Right–to–Know Response, May 14, 2009 (Fourth Response) at 1–3, R.R. at 352a–354a.) Requestor appealed the Township's Fourth Response to the OOR, essentially presenting the same arguments as in his Third OOR Appeal, along with an extended discussion as to why emails among a quorum of the Supervisors discussing Township business/activities cannot be protected as predecisional deliberations pursuant to the RTKL. (Requestor's Right to Know Law Appeal, June 1, 2009 (Fourth OOR Appeal) at 1–7, R.R. at 356a–362a.)

By correspondence dated February 24, 2009, the Township filed a response with the OOR to the Fourth OOR Appeal setting forth the same arguments in opposition as it did with respect to the Third OOR Appeal. (Township's Response to Fourth OOR Appeal at 1–6, R.R. at 329a–334a.) The Township included the additional argument that the email requested in Requestor's Fourth Request was exempt from access by Requestor pursuant to Section 708(b)(10)(i)(A) of the RTKL. (Township's Response to Fourth OOR Appeal at 1–6, R.R. at 329a–334a.)

The OOR notified the parties that Requestor's Third and Fourth OOR Appeals would be consolidated and addressed in a single Final Determination. (R.R. at 380a). By Decision issued July 8, 2009, the OOR granted Requestor's Third and Fourth OOR Appeals without conducting an evidentiary hearing. (Final Determination, July 8, 2009 (Third Final Determination) at 14, R.R. at 394a.) The OOR found: (1) "consistent with its prior Final Determinations on this issue[,] that e-mails of Township Supervisors regarding Township business are records of' the Township because they are communications by and through its governing body about Township business and/or activities;" (2) that "the Township did not overcome the presumption of openness by showing that the records requested were privileged communications;" and (3) that "the Township failed to meet its burden of proof that the Harris [e]-mail and related e-mail(s) it shielded under [the RTKL] qualify as predecisional deliberations." (Third Final Determination at 14–15, R.R. at 394a–395a.) Accordingly, the OOR directed the Township to procure and provide the requested emails within thirty days. (Third Final Determination at 15, R.R. at 395a.) The Township appealed the OOR's Third Final Determination to the trial court.

By Decision and Order dated September 30, 2010, the trial court reversed the

---

**15.** 65 P.S. § 67.708(b)(10)(i)(A). Section 708(b)(10)(i)(A) provides that a record that reflects "[t]he internal, predecisional deliberations of an agency, its members, employees or officials …" is exempt from access by a requestor.

OOR's Third Final Determination. (Trial Ct. Op. at 17, September 30, 2010, R.R. at 667a.) The trial court again essentially made the same findings of fact and conclusions of law in its September 30, 2010 Decision and Order that it set forth in its September 22, 2010 Decision and Order. (Trial Ct. Op. at 1–17, R.R. at 651a–667a.) With respect to the issue of whether the Township must provide access to records that were created prior to the January 1, 2009 effective date of the RTKL, the trial court concluded that the RTKL is neither retroactive nor does it expressly state that it applies to documents created prior to January 1, 2009. (Trial Ct. Op. at 16–17, R.R. at 666a–667a.) The trial court also determined that the emails sent from one Supervisor to another regarding the merits of the nomination of a specific person for appointment to a Township board and seeking the input of the other Supervisors qualifies as a predecisional deliberative record, as it pertains to a predecisional issue, which is deliberative in character; therefore, the emails were exempt from public access pursuant to Section 708(b)(10)(i)(A) of the RTKL. (Trial Ct. Op. at 15, R.R. at 665a.)

## II. REQUESTOR'S APPEALS TO THIS COURT

Requestor timely appealed the trial court's September 22, 2010, September 30, 2010, and October 1, 2010, Orders to this Court.[16] In three separate, but identical opinions, filed on March 4, 2011, pursuant to Pa.R.A.P. 1925(b), the trial court opined that this matter is controlled by this Court's recent decision in *In re: Silber-*

stein, 11 A.3d 629 (Pa.Cmwlth.2011), in which we held that certain emails and documents identified on an individual township commissioner's personal computer were not public records. The trial court opined further that this matter parallels *Silberstein;* therefore, the court determined that all of the information sought by Requestor in his First, Second, Third and Fourth Requests is not subject to disclosure under the RTKL. We now turn to the issues raised by Requestor in these appeals.[17]

## A. WHETHER THE RTKL APPLIES TO RECORDS CREATED PRIOR TO THE EFFECTIVE DATE OF THE RTKL

Requestor argues that the trial court erred by holding that the current RTKL does not apply to public records created prior to the January 1, 2009 effective date. Requestor contends that affirming the trial court's holding would be an absurd result because any information, such as budgets or minutes, that is clearly a public record created prior to January 1, 2009, would no longer be subject to public access.

In response, the Township argues that the RTKL does not specifically provide that it is to be applied retroactively and there is no express provision stating that it applies to documents created prior to January 1, 2009. The Township argues that, at the time the requested emails were created, the existing, and now repealed, RTKL unquestionably protected them from disclosure. The Township contends that justice requires the prospective appli-

---

**16.** This Court's scope of review from a decision of a trial court in a case under the RTKL is "limited to determining whether findings of fact are supported by competent evidence or whether the trial court committed an error of law, or an abuse of discretion in reaching its decision." *Kaplin v. Lower Merion Township,*

19 A.3d 1209, 1213 n. 6 (Pa.Cmwlth.2011), *petitions for allowance of appeal denied,* —— Pa. ——, 29 A.3d 798 (Nos. 421–423 MAL 2011, filed September 21, 2011).

**17.** In the interest of clarity, we have reordered the issues presented by Requestor.

cation only of the applicability of the RTKL to discretionary or private records as opposed to mandatory or official records.

■ The Township is correct that there is no specific mandate in the RTKL that the law is to be applied retroactively and that statutes are presumed to operate prospectively only. *See Krenzelak v. Krenzelak,* 503 Pa. 373, 380, 469 A.2d 987, 990 (1983) (Pursuant to Section 1926 of the Statutory Construction Act of 1972, 1 Pa. C.S. § 1926, unless the General Assembly clearly and manifestly so intended, no statute shall be construed to be retroactive.). However, the applicability of the RTKL is not specifically limited to public records created after its January 1, 2009 effective date, but only to *requests* for information made after the effective date. Section 3101 of the RTKL expressly states that "[t]his act shall apply to *requests* for information made after December 31, 2008." 65 P.S. § 67.3101 (emphasis added). In addition, this Court has addressed, pursuant to the current RTKL, requests for access to public records created prior to the January 1, 2009 effective date. *See, e.g., Kaplin,* 19 A.3d at 1216 (affirming a court of common pleas order holding that the township properly withheld requested documents for the period from January 8, 2008 to November 16, 2009, based on Section 708(b)(10)(i) of the RTKL, 65 P.S. § 67.708(b)(10)(i)); *Pennsylvania State Troopers Association v. Scolforo,* 18 A.3d 435, 443 (Pa.Cmwlth.2011) (affirming the OOR's granting, in part, of a requestor's RTKL request to the Pennsylvania State Police for information dating back to January 1, 2005.)

Moreover, adoption of the Township's position would severely limit access to public records. Such limitation is contrary to the well-settled tenet that the RTKL "is remedial legislation designed to promote access to official government information in order to prohibit secrets, scrutinize the actions of public officials, and make public officials accountable for their actions." *Bowling v. Office of Open Records,* 990 A.2d 813, 824 (Pa.Cmwlth.2010), *petition for allowance of appeal granted,* — Pa. ——, 15 A.3d 427 (2011); *see also (Lutz v. City of Philadelphia,* 6 A.3d 669, 674 (Pa. Cmwlth.2010)) ("This narrow access runs afoul of the well[-]settled tenet that the Right–to–Know Law's 'exemptions from disclosure must be narrowly construed' because it is remedial legislation.").

Accordingly, the trial court erred in its September 30, 2010 Decision by holding that the RTKL does not apply to public records created prior to its January 1, 2009 effective date. Rather, the RTKL applies to information requested after January 1, 2009, even if created prior to that date.

## B. WHETHER REQUESTOR'S REQUESTS COMPLY WITH SECTION 703 OF THE RTKL

The OOR concluded that the emails requested in paragraphs 3, 4, 5, and 6 of Requestor's First and Second Requests were sufficiently specific pursuant to Section 703 of the RTKL[18] to inform the Township as to what documents were being sought. (First Final Determination at 7–8, R.R. at 37a–38a; Second Final Determination at 4, R.R. at 704a.) However, in order to cure any over broadness or vagueness, the OOR directed the Township to provide a sampling of the requested emails to enable Requestor to craft a specific request more limited in type, subject-matter, time-frame and scope. (First Final Determination at 7–8, R.R. at 37a–38a;

18. 65 P.S. § 67.703.

Second Final Determination at 4, R.R. at 704a.) The trial court correctly found that the OOR erred.

■ The RTKL contains specific provisions that dictate the process that must occur when a local agency is presented with a request for access to public records. Section 901 directs the agency to make a good faith effort to determine the type of record requested and then to respond promptly to the request. 65 P.S. § 67.901; *Pennsylvania State Police*, 995 A.2d at 516. Pursuant to Section 903, if an agency denies access to a record, it must give "[t]he specific reasons for the denial." 65 P.S. § 67.903; *Pennsylvania State Police*, 995 A.2d at 516. Finally, Section 1101 provides that an appeal to the OOR "shall state the grounds upon which the requester asserts that the record is a public record ... and shall address any grounds stated by the agency for delaying or denying the request." 65 P.S. § 67.1101; *Pennsylvania State Police*, 995 A.2d at 516. We have previously explained that:

> Under these provisions, the requestor tells the agency what records he wants, and the agency responds by either giving the records or denying the request by providing specific reasons why the request has been denied. The requestor can then take an appeal to the OOR where it is given to a hearing officer for a determination. Nowhere in this process has the General Assembly provided that the OOR can refashion the request.

*Pennsylvania State Police*, 995 A.2d at 516. Therefore, it is the requestor's responsibility to tell an agency what records he or she wants. The OOR has no authority to remedy a requestor's failure to provide a sufficiently specific or detailed request by directing an agency to provide a sampling of the information sought in order for the requestor to fashion a more specific and detailed request. According-

ly, it was beyond the purview of the OOR to direct the Township to provide a sampling of the emails set forth in paragraphs 3, 4, 5, and 6 of the First and Second Requests in order for Requestor to fashion more specific and detailed requests.

■ Moreover, the OOR erred by determining that Requestor's request was sufficiently specific to enable the Township to ascertain which records were being requested. In paragraphs 3, 4, 5, and 6 of the First and Second Requests, Requestor is seeking: (1) all emails between the Supervisors regarding any Township business and/or activities for the past one and five years; and (2) all emails between the Supervisors and the Township employees regarding any Township business and/or activities for the past one and five years. (First Request, R.R. at 4a; Second Request, R.R. at 681a.) In his appeals to the OOR, Requestor simply states that he had to make his requests broad enough to be all-inclusive because he does not know which emails the Township possesses and the Township does not have a catalogue organizing the emails into specific categories. (First OOR Appeal at 6–7, R.R. at 15a–16a; Second OOR Appeal at 7, R.R. at 694a.) However, Requestor fails to specify what category or type of Township business or activity for which he is seeking information. (First OOR Appeal at 6–7, R.R. at 15a–16a; Second OOR Appeal at 7, R.R. at 694a.) While the purpose of the RTKL is to provide access to public records in order to prohibit secrets, allow the public to scrutinize the actions of public officials, and make public officials accountable for their actions, it would place an unreasonable burden on an agency to examine all its emails for an extended time period without knowing, with sufficient specificity, what Township business or activity the request is related.

Therefore, the trial court correctly determined in its September 22, 2010 and October 1, 2010 Decisions that the OOR erred by directing the Township to provide a sampling of the information sought in order for Requestor to fashion more specific and detailed requests. (Trial Ct. Op. at 11, September 22, 2010, R.R. at 283a; Trial Ct. Op. at 11–12, October 1, 2010, R.R. at 809a–810a.) As such, the Township properly denied Requestor's request for the emails requested in paragraphs 3, 4, 5, and 6 of Requestor's First and Second Requests.

## C. WHETHER THE REQUESTED EMAILS ARE PUBLIC RECORDS OF THE TOWNSHIP

Requestor contends that the requested emails are "public records" regardless of whether they are contained on a personal computer or personal email account because deliberation of Township business by a quorum of the Supervisors is an activity "of" the Township. Requestor contends further that the Township offered no evidence that the records are exempt from the RTKL.

In paragraphs 1, 2, and 7 and paragraphs 1, 2, 7, and 8 of the First and Second Requests, Requestor seeks all emails between any and/or all of the Supervisors regarding: (1) the Moran Property for the past one and five years; (2) the Cindy Haines property for the past one and five years; and (3) the calendar issue from the Sardo federal trial for the last one and three years. (First Request,

R.R. at 4a; Second Request, R.R. at 681a.) We must determine whether the emails exchanged by two or more of the Supervisors are records "of" the Township.

Section 102 of the RTKL defines a "record" as "[i]nformation regardless of physical form or characteristics, that documents a transaction or activity of an agency and that is created, received or retained pursuant to law or in connection with a transaction, business or activity of the agency." [19] 65 P.S. § 67.102. Pursuant to Section 601 of The Second Class Township Code,[20] a second class township is governed and supervised by a board of supervisors. Thus, a second class township can only operate through its governing body, a board of supervisors.[21] *See Commonwealth of Pennsylvania, Office of Attorney General By Thomas W. Corbett, Jr., Attorney General v. Richmond Township,* 975 A.2d 607, 617 (Pa.Cmwlth.2009) (statute provided that township acted through its board of supervisors). Accordingly, regardless of whether the Supervisors herein utilized personal computers or personal email accounts, if two or more of the Township Supervisors exchanged emails that document a transaction or activity of the Township and that were created, received, or retained in connection with a transaction, business, or activity of Township, the Supervisors may have been acting as the Township, and those emails could be "records" "of the Township." As such, any emails that meet the definition of "record" under the RTKL, even if they are stored on the Supervisors' personal com-

---

**19.** Section 102 provides further that the term "record" "includes a document, paper, letter, map, book, tape, photograph, film or sound recording, information stored or maintained electronically and a data-processed or image-processed document." 65 P.S. § 67.102.

**20.** Act of May 1, 1933, P.L. 103, *as amended,* 53 P.S. § 65601.

**21.** We note that, pursuant to The Second Class Township Code, "[a]n affirmative vote of a majority of the entire board of supervisors at a public meeting is necessary in order to transact any business." Section 603 of the Second Class Township Code, 53 P.S. § 65603.

puters or in their personal email accounts, would be records of the Township.

The Township argues that this issue is controlled by this Court's decision in *Silberstein*. In *Silberstein*, the requestor requested emails between an individual township commissioner, his constituents, and outside legal counsel regarding certain applications for development projects in the township. *Silberstein*, 11 A.3d at 630. In reviewing the requestor's request, we determined that the request, on its face, sought information that documented activity of the township through its commissioners in connection with the business of the township. *Id.* at 633. Thus, this Court addressed the issue of whether the emails and documents on an individual township commissioner's personal computer were records "of" the township and, therefore, deemed public records. *Id.* In holding that the requested emails were not "of the local agency" within the meaning of the RTKL, we reasoned as follows:

> [A] distinction must be made between transactions or activities of an agency which may be a "public record" under the RTKL and the emails or documents of an individual public office holder. As pointed out by the trial court, Commissioner Silberstein is not a governmental entity. He is an individual public official with no authority to act alone on behalf of the Township.
>
> Consequently, emails and documents found on Commissioner Silberstein's personal computer would not fall within the definition of record as any record personally and individually created by Commissioner Silberstein would not be a documentation of a transaction or activity of York Township, as the local agency, nor would the record have been created, received or retained pursuant to law or in connection with a transaction, business or activity of York Township.

In other words, unless the emails and other documents in Commissioner Silberstein's possession were produced with the authority of York Township, as a local agency, or were later ratified, adopted or confirmed by York Township, said requested records cannot be deemed "public records" within the meaning of the RTKL as the same are not "of the local agency".

*Id.*

Herein, like the emails sought in *Silberstein*, a review of the emails sought in paragraphs 1, 2, and 7 and paragraphs 1, 2, 7, and 8 of Requestor's First and Second Requests, reveals that, on the face, the requests seek information that documents an activity of the Township through its Supervisors in connection with business of the Township. However, unlike *Silberstein*, the emails being sought by Requestor are alleged to have been exchanged between at least two of the three Supervisors, resulting in the transaction of Township business or activities. In other words, Requestor is not seeking emails from the Supervisors with respect to any activity or business of the Township in which a Supervisor acted individually, alone, or communicated only with an outside third party. Therefore, we conclude that the issue presented in these appeals of whether the requested emails are records of the Township is not controlled by our decision in *Silberstein*.

We now turn to the issue of whether the requested emails or records are public records. A "public record" is defined in the RTKL as "[a] record, including a financial record, of a ... local agency that: (1) is not exempt under Section 708; (2) is not exempt from being disclosed under any other Federal or State law or regulation or judicial order or decree; or (3) is not protected by a privilege." Section 102 of the RTKL, 65 P.S. § 67.102. Section 305(a)

of the RTKL provides that "[a] record in the possession of a . . . local agency shall be presumed to be a public record." 65 P.S. § 67.305(a). Section 901 of the RTKL provides that "an agency shall make a good faith effort to determine if the record requested is a public record . . . and whether the agency has possession, custody or control of the identified record." 65 P.S. § 67.901.

Requestor contends that, because the requested emails were exchanged by at least two of the three Supervisors, the emails document the transaction of Township business by a quorum of the Supervisors. Therefore, Requestor argues that the emails are deemed "public" as they reflect the deliberation of Township business within the meaning of the Sunshine Act and he has a right of access to the emails pursuant to Section 708(b)(10)(ii) of the RTKL, 65 P.S. § 67.708(b)(10)(ii). As noted herein, Section 704 of the Sunshine Act provides that "[o]fficial action and deliberations by a quorum of the members of an agency shall take place at a meeting open to the public. . . ." [22] 65 Pa.C.S. § 704. The term "deliberation" is defined in the Sunshine Act as "[t]he discussion of agency business held for the purpose of making a decision." Section 703 of the Sunshine Act, 65 Pa.C.S. § 703. Section 708(b)(10)(ii) of the RTKL provides, in pertinent part, that "[a] record which is not otherwise exempt from access under this act and which is presented to a quorum for deliberation in accordance with 65 Pa.C.S. Ch. 7 [Sunshine Act] shall be a public record."

The OOR held that the public nature of any emails sent or received by the Supervisors regarding Township business or activities could be presupposed and, therefore, the content must be disclosed. However, the OOR also found that the Township's Open Records Officer did not conduct a good faith review of the Township's records to assess whether the Township could provide any emails in response to Requestor's requests. As this Court stated in *Silberstein:*

> [T]he current RTKL has a procedure in place that puts the burden upon a local agency, through its designated open-records officer, to first make a good faith determination as to whether any requested record is in fact a "public record" and, if so, then determine whether the identified public record is within its possession, custody or control. Sections 502 and 901 of the RTKL, 65 P.S. §§ 67.502; [23] 67.901. In making such a good faith determination of whether a requested record is a public record, the open-records officer is required, *inter alia,* to direct requests to other appropriate persons within the agency. Section 502 of the RTKL, 65 P.S. § 67.502. Therefore, this Court believes that a right-to-know request directed to a local agency, . . ., requires that the local agency's open-records officer inquire of its public officials, . . ., as to whether the public official is in possession, custody or control of a requested record that could be deemed public. It is then the open-records office's duty and responsibility to determine whether the record is public, whether the record is subject to disclosure, or whether the public record is exempt from disclosure.

*Silberstein,* 11 A.3d at 633–34. Accordingly, *Silberstein* makes it clear that the Township's Open Records Officer had a

<hr>

**22.** "A quorum is two members of a three-member board of supervisors." Section 603 of The Second Class Township Code, 53 P.S. § 65603.

**23.** Section 502 of the RTKL sets forth the functions of an open records officer.

duty to do more than just examine the Township's computers or files that he determined were in the Township's physical possession. He had a duty to inquire of the Supervisors as to whether he or she was in the possession, custody, or control of any of the foregoing requested emails that could be deemed public and, if so, whether the emails were, in fact, public and subject to disclosure or exemption from access by Requestor. However, rather than directing the Township's Open Records Officer to make such a good faith determination of the requested information, the OOR simply determined that the emails requested in paragraphs 1, 2, and 7 and paragraphs 1, 2, 7, and 8 of the First and Second Requests were public records that had to be disclosed. This was error on the part of the OOR.[24] Moreover, while Requestor is correct in his assertion with respect to Section 708(b)(10)(ii) of the RTKL, we cannot reach the question of whether the emails exchanged were between a quorum of the Supervisors which constitute the "deliberation" of Township business pursuant to the Sunshine Act. The Township's Open Records Officer must first determine, by conducting a good faith review, if the requested emails were exchanged for the purpose of deliberation of the Township's business by a quorum of the Supervisors within the meaning of the Sunshine Act.

Therefore, we are constrained to vacate, in part, the trial court's September 22, 2010 and October 1, 2010 Orders and remand to the trial court for further remand to the OOR to direct the Township's Open Records Officer to fulfill his duty under the RTKL by making a good faith determination of: (1) whether the information requested in paragraphs 1, 2, and 7 of the First Request and paragraphs 1, 2, 7, and 8 of the Second Request are public records; (2) whether the Township, through an inquiry of its Supervisors, has possession, custody, or control of the identified records; and (3) whether such records are exempt from access by Requestor or subject to a privilege.[25]

We now turn to the information requested in Requestor's Third and Fourth Requests. In the Third Request, Requestor seeks:

> A copy of any and/or all emails between Supervisors John Harris and/or Arthur Bustard and/or Chase Kneeland and/or (sic) Steve Quigley pertaining to either the nomination and/or consideration of Caesar Gambone to the Zoning Board and/or Doug Rotondo to the Planning Commission and/or any nomination for the re-organization meeting of January 7, 2008 regardless as to whether they were transmitted on personal computers and/or personal email accounts.

(Third Request, R.R. at 299a.) In the Fourth Request, Requestor seeks:

> [T]he email and/or emails referenced by John Harris at the January 16, 2008 Board meeting when Supervisor Harris stated that he—"**sent an email to each of the 2 of them (Supervisors Bustard and Quigley), I said this person is**

---

**24.** The OOR is vested under the RTKL with the power to correct the errors of an agency. *Department of Corrections v. Office of Open Records*, 18 A.3d 429, 434 (Pa.Cmwlth.2011).

**25.** We note that once an agency determines, in good faith, that a record is not public or not in its possession, custody, or control, the burden lies with the requestor to prove that a requested record is public and that the agency does, in fact, have possession of the record. *See Office of the Governor v. Bari*, 20 A.3d 634, 640 (Pa.Cmwlth.2011) ("The burden of proving that a requested piece of information is a 'public record' lies with the request [or]." The agency does not have the burden to prove that it did not have possession of a requested record.)

someone who would like to be on the zoning board, how does that sit with you, we went ahead and made a motion and then we passed it." He was referencing an email about Cesaer [sic] Gambone's possible nomination to the Zoning Board.

(Fourth Request, R.R. at 351a.) On the face, these requests seek information that documents certain activities of the Township, through its Supervisors, in connection with Township business. Therefore, the requested emails fall within the definition of "record" as defined in Section 102 of the RTKL and in accordance with our previous holding herein that emails exchanged between two or more of the Supervisors on their personal computers regarding Township business or activities may be "records" "of the agency." However, it also appears from the Township's denials of the Third and Fourth Requests that the Township's Open Records Officer did not inquire of the Supervisors as to whether they were in possession, custody, or control of a requested email that could be deemed public. Rather, the Township's

Open Records Officer only reviewed the records he deemed were in the Township's possession.[26] Accordingly, we vacate the trial court's September 30, 2010 Order and remand to the trial court for further remand to the OOR to direct the Township's Open Records Officer to fulfill his duty under the RTKL by making a good faith determination of: (1) whether the information requested in Requestor's Third and Fourth Requests are public records; (2) whether the Township, through an inquiry of its Supervisors, has possession, custody, or control of the identified records; and (3) whether such records are exempt from access by Requestor or subject to a privilege.[27]

## III. CONCLUSION

Accordingly, the trial court's Order dated September 22, 2010, reversing the OOR's First Final Determination is affirmed in part, vacated in part, and remanded to the trial court for further remand to the OOR for proceedings consistent with this opinion.[28] The trial court's October 1, 2010 Order reversing

---

26. As stated previously herein, the Township's Open Records Officer did provide Requestor with one email chain, which was copied to the Township's manager, that he believed was responsive to Requestor's Third Request. (Third Response at 1–3, R.R. at 303a–305a.)

27. As previously discussed, the trial court determined that the requested emails were exempt from disclosure as predecisional deliberations pursuant to Section 708(b)(10)(i)(A) of the RTKL, 65 P.S. § 67.708(b)(10)(i)(A). As with his First Request and Second Request, Requestor argued before the OOR that, despite the exemption provided in Section 708(b)(10)(i)(A), the requested emails in his Third Request and Fourth Request are subject to access as public records pursuant to Section 708(b)(10)(ii) of the RTKL, 67 P.S. § 67.708(b)(10)(ii), because the emails were exchanged between a quorum of the Supervisors for deliberation in accordance with the Sunshine Act. Again, while Requestor is correct in his assertion with respect to Section

708(b)(10)(ii), we cannot reach this question due to our holding that the Township's Open Records Officer is to fulfill his duty under the RTKL by making a good faith review of the requested emails and may find that the requested emails are otherwise exempt from access pursuant to the RTKL.

28. We note that our remand is consistent with this Court's recent decision in *Signature Information Solutions, LLC v. Aston Township*, 995 A.2d 510, 514 (Pa.Cmwlth.2010), wherein we held that a local agency is not permitted to alter its reason for denying a request on appeal to the OOR. As we explained in *Pennsylvania State Police*, and underscore here, "agencies as a normal practice should raise all objections to access when the request is made if the reason for denying access can be reasonably discerned when the request is made." 995 A.2d at 517. The situation presented here is sufficiently unique to warrant remand as in *Pennsylvania State Police*.

the OOR's Second Final Determination is affirmed in part, vacated in part, and remanded to the trial court for further remand to the OOR for proceedings consistent with this opinion. The trial court's September 30, 2010 Order reversing the OOR's Third Final Determination is vacated and remanded to the trial court for further remand to the OOR for proceedings consistent with this opinion.[29]

### ORDER

**NOW,** December 7, 2011, it is hereby ordered as follows:

(1) The Order of the Court of Common Pleas of Montgomery County dated September 22, 2010, and entered at Docket No. 09–09854, is affirmed in part, vacated in part, and remanded to the Court of Common Pleas for further remand to the Office of Open Records for proceedings consistent with the foregoing opinion;

(2) The Order of the Court of Common Pleas of Montgomery County dated October 1, 2010, and entered at Docket No. 09–10067, is affirmed in part, vacated in part, and remanded to the Court of Common Pleas for further remand to the Office of Open Records for proceedings consistent with the foregoing opinion; and

(3) The Order of the Court of Common Pleas of Montgomery County dated September 30, 2010, and entered at Docket No. 09–24448 is vacated and remanded to the Court of Common Pleas for further remand to the Office of Open Records for proceedings consistent with the foregoing opinion.

Jurisdiction relinquished.

---

**29.** Due to the disposition of the issues discussed herein, we will not address the remaining issues raised by Requestor in these appeals.